**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

DEMITRIOUS MCKNIGHT,      :    Case No. 2:23-cv-426
     :
       Petitioner,      :    District Judge Sarah D. Morrison
     :    Magistrate Judge Peter B. Silvain, Jr.
vs.      :
     :
WARDEN, PICKAWAY      :
CORRECTIONAL INSTITUTION,      :
     :
       Respondent.      :

## REPORT AND RECOMMENDATION[1]

Petitioner, a state prisoner proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and this Court's Amended General Order 22–05. Pending before the Court are the Petition (ECF No. 4); Respondent's Return of Writ (ECF No. 9); and the state court record (ECF No. 8). Petitioner did not file a Reply. For the reasons that follow, the undersigned **RECOMMENDS** that the Petition be **DENIED**, and this action be **DISMISSED**.

## I.    Procedural History

The record shows the relevant procedural history. *See* ECF No. 8. The Ohio Court of Appeals, Tenth Appellate District provided the following factual summary:

> **{¶ 2}** A jury convicted defendant-appellant Demitrious D. McKnight of the first-degree felony of aggravated burglary under R.C. 2911.11, with a gun specification, and of felony murder under R.C. 2903.02, also with a gun specification. It acquitted him of aggravated robbery, and counts for aggravated murder and murder charged in another fashion were dropped at the prosecution's request without the jury having reached a verdict. The trial court sentenced Mr. McKnight to 15 years to life in prison for the murder, consecutive to 3 additional years on the gun

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

specification to that count and consecutive, also, to a 4-year prison term for the aggravated burglary and 3 additional years for the gun specification attached to that count. His total sentence therefore was 25 years to life, with 7 of those years attributable to the aggravated burglary count and specification. Oct. 1, 2020 Judgment Entry.

{¶ 3} The verdicts came after the jury heard from witnesses including Ms. A.C. She lived in a first-floor unit at the Berwick Arms apartment complex, and her "grandbaby was staying there," too. Tr. at 191. She told the jury that a "close friend" of hers, a "nice gentleman, respectable," by the name of "New York" (and with the given name, it developed, of [Martin] Harris), helped defray her bills in exchange for her permitting him on occasion to deal drugs out of her apartment. *Id.* at 193, 196 ("I would let him sell a little crack, if he paid my bills and stuff, and he did"). That is what he was doing, she said, on the afternoon of May 24, 2018. *Id.* at 193, 198.

{¶ 4} Sales were winding down and Ms. A.C.'s granddaughter had returned to the apartment and gone to her room for a nap when Ms. A.C., who herself had partaken of some crack, heard a knock at the apartment door. *Id.* at 199-200. She "looked out the peak hole," but someone had covered it with his finger, she testified. *Id.* at 201. She demanded that the person move away from the peephole, and did not recognize him, but Mr. Harris instructed her to admit him: "New York said, Ms. [A.C.], open the door so I can sell this stuff and * * * get out of here." *Id.* at 202. Things happened quickly, she recounted. "So when I went to open the door, it was, like, boom; and he was, like, I want it all. I want it all. * * * * I was just so scared because my granddaughter was in the back, and then they point the gun at me, and I'm, like, I ain't got nothing." *Id.* at 202.

{¶ 5} Two men had burst in, she said, and "I didn't even get the door all the way open before they bust through, knocking me in behind the door." *Id.* at 205. "[W]hen they came in, when they pushed the door in, I slammed in against the wall and the door came to me." *Id.* at 207. The "dark-skinned guy," whom she subsequently identified as defendant McKnight, "bust through with a gun." *Id.* at 205, 206-07 (identification of defendant, who "had a nine" [millimeter firearm]). She screamed, and they told her: "We want the money. Shut the fuck up --." *Id.* at 209. Both men approached Mr. Harris, who remained calm, while Ms. A.C.'s thoughts turned to rescuing her granddaughter. *Id.* at 202. "So * * * they went to New York and was, like, MF, give me the money, give me the shit. Give me the shit. Give me the shit. Give me the money. Give me the shit. Just give me it all. Give me it all." *Id.* at 203; *see also id.* at 209.

{¶ 6} Ms. A.C. testified that she then ran out of the apartment, intending to circle around and get her granddaughter out through a window. *Id.* at 203, 210, 212. She turned around and saw the second intruder ("light skinned with dreadlocks" and wearing a red hoodie, *id.* at 204) coming past her out of the apartment; she put up her hands and started screaming again. *Id.* at 212. At this point, she said, she had

not heard any gunshots. *Id.* at 212. "[T]hen he just ran past * * *, he was just trying to get away. * * * * So then that's when the shots said, Pop, pop, pop, pop, pop, pop. They just start. I said, Oh, Momma. My granddaughter over in there." *Id.* at 213. But then her granddaughter appeared, running away from the apartment. *Id.* at 214.

{¶ 7} After hugging her granddaughter, Ms. A.C. approached the building and saw Mr. McKnight emerging from her window. *Id.* at 215 ("the defendant was hanging out my window * * * *; and I heard him say, Help. Help."). A building security guard arrived, gun drawn, and Ms. A.C. followed him back toward her apartment to check on the status of Mr. Harris "and all of this stuff." *Id.* at 216. Ms. A.C. further testified that she later picked Mr. McKnight out of a photo array and identified him as having "had a gun and entered the apartment"; she did not see his compatriot in the red hoodie to have a gun, she said, and her recollection of these events was "[n]ot at all" impaired by her having smoked crack that day. *Id.* at 218-19.

{¶ 8} Called to the witness stand, security guard Eric Baker told the jury that he had been flagged down by a woman "saying someone just shot up her apartment." *Id.* at 270. Upon arriving at the scene, he "noticed a male trying to come out of a window." *Id.* That man turned out to be Mr. McKnight, who had been shot in the face. "[O]nce we got him out -- fully out of the window and onto the ground, we were informed that there was someone else still inside." *Id.* at 271-72.

{¶ 9} Mr. Baker entered the building and discovered Mr. Harris lying in the entry to the apartment, with his torso extending into the hallway. *Id.* at 276. "He had been shot," but was "still alive" and asking for help. *Id.* at 272. Mr. Baker "asked him did he know who shot him, and he kind of just pointed like towards the window, or outside, but he wasn't able to say who it was or the description or anything of that nature. He just kept pointing as [if] to say they were outside." *Id.* at 273. Mr. Baker confirmed that the window at which he thought Mr. Harris was pointing was the same window from which Mr. McKnight had emerged. *Id.*; *see also id.* at 277 (from his prone position, Mr. Harris was pointing back through the apartment "towards the window").

{¶ 10} A police officer who responded to the scene testified to have observed Mr. McKnight lying in front of the building with "an apparent gunshot wound to his face." *Id.* at 68 (Officer Lucci). Inside the apartment, the officer found Mr. Harris in "[v]ery bad" condition with gunshot wounds and "unable to speak." *Id.* at 74. The officer searched Mr. Harris and found "a large sum of money" and "a large [amount of] suspected crack cocaine in his pants' pockets." *Id.* at 75. He also found two guns in the apartment, one a "MAC-9" [sic], the other a revolver. *Id.* at 77; *see also* Ex. B (Crime Scene Search Unit report with two "Recovered Firearm" forms, one for the Cobray MAC-11 9 mm weapon, the other for a Sturm Ruger .357 revolver), Ex. E (Firearms Report).

3

{¶ 11} The Coroner's evidence indicated that Mr. Harris died that day from two gunshot wounds to the trunk of his body.  *Id.* at 179, 181-82, and Ex. D.  Both bullets passed through the body without leaving fragments.  *Id.* at 171.  Each bullet had at least a slightly downward trajectory, one piercing his liver and the other his colon.  *Id.* at 178, 180.

{¶ 12} The state also adduced evidence that three spent casings from the scene had come from the 9 mm Cobray semi-automatic pistol and that five spent cartridge casings were in the .357 Magnum.  *Id.* at 318, 321, and Ex. E.  Other expert testimony revealed that a bullet recovered at the scene with Mr. Harris's blood on it was capable of having been fired from the Cobray 9 mm but not from the .357 Magnum.  *See Id.* at 431 (blood DNA testimony); 320-22 (firearms expert).  Mr. Harris was not a major contributor of DNA to either gun; Mr. McKnight in all overwhelming probability was a major contributor of DNA to both, including to DNA (from blood) on the trigger and handle of the Cobray MAC-11.  *Id.* at 418, 419, 425-27 (testimony of forensic DNA [analyst] Miranda Smith).  And the DNA analyst testified that Mr. McKnight's DNA was found on fingernail scrapings from Mr. Harris's left hand, as well as on the apartment's doorjamb.  *Id.* at 428-29.

{¶ 13} The state also presented testimony of a jailhouse informant, S.A.  He testified to having been housed with Mr. McKnight for "a month or two" (a time period that grew considerably shorter under cross-examination) while Mr. McKnight was awaiting trial in this case.  *Id.* at 331, 361-62.  According to S.A., Mr. McKnight confessed that he and an unnamed colleague had "forced their way into" an apartment after having gone there under the "guise that they were * * * to sell or purchase a weapon."  *Id.* at 333, 335.  After having "had to get up in there," the story ran, Mr. McKnight and the "victim * * * got to arguing and, like, talking strongly back and forth to each other.  He said that he pulled out his phone, just looking around to see, like, what was inside the apartment, whatever, and a few minutes later he heard a gunshot, and he responded to the gunshot, and next thing you know he was shot, and he said he was stumbling back and fell * * * out the window."  *Id.* at 336.  S.A.'s account continued that Mr. McKnight "said that the person pretty much got what [h]e deserved, and he said it was funny how he got shot in the face and survived and that person didn't, and he died; and so he had said everything that he got he deserved."  *Id.* at 339-40 (with the transcript perhaps not entirely clear as to whether that last "he" connotes Mr. Harris or Mr. McKnight).  S.A. also testified that Mr. McKnight had said that he was tipped off to the hold-up prospect by a female neighbor.  *Id.* at 340; *see also id.* at 387.

{¶ 14} S.A. acknowledged that he received significant consideration for providing his account.  His potential sentence on a pending robbery charge was reduced from 22 to 12 years (not counting a potential year and a half for post-release control violation) when the state agreed on his plea of guilty to dismiss a repeat violent offender specification that had been based on an earlier robbery, and the state further agreed to recommend that he receive a sentence of five years in prison.  *Id.* at 344 (reciting cooperation agreement), 357.  The case detective acknowledged

that various witness reports and other details involving the events in question would have been in the state's discovery provided Mr. McKnight (and potentially available, the defense suggested, in his jail pod). *Id.* at 472-73 (Detective Mall), 364 (S.A. concedes that reading someone's discovery packet in a prison pod is a theoretical possibility).

**{¶ 15}** The state also called the detective, Aaron Mall. Detective Mall was permitted to testify, among other things, as to his understanding that Mr. Harris had been under federal investigation for illegal weapons dealing at the time of his death. *Id.* at 469. He testified, too, that Ms. A.C. had described Mr. McKnight as having had a gun in his hand, and that her description of the gun matched the Cobray MAC-11 found inside the apartment, *id.* at 493. He characterized Ms. A.C. as having "seemed lucid" and cogent when he spoke with her on the evening of the shooting. *Id.* at 497.

**{¶ 16}** Detective Mall interviewed Mr. McKnight on July 16, 2018, some 54 days after the event. *Id.* at 503. The jury heard a tape-recording of that discussion. *Id.* at 511-31 (trial commentary by Detective Mall about the tape; the record contains no transcript of the interview), Ex. J (CD recording). Mr. McKnight told the detective that he had gone to the apartment to try to sell a gun "[i]n exchange for an eight ball of powder [cocaine]." *Id.* at 518 (Detective's summary). "[T]hey got to arguing" over the price of the gun, and "[t]he deceased tried to grab Mr. McKnight's gun," according to Mr. McKnight. *Id.* at 520 (adding "that the deceased went for his gun and that the deceased then shot Mr. McKnight"). Mr. McKnight said that he had procured the MAC from "a crackhead," *id.* at 523, and that he did not know the identity of the person who had accompanied him into the apartment, *id.* at 529.

*State v. McKnight*, 10th Dist. No. 20AP-595, 2022-Ohio-591; (ECF No. 8, PageID 207–11).

As noted, the jury found Petitioner guilty of felony murder and aggravated burglary, both with gun specifications, and not guilty of aggravated robbery. (ECF No. 8, PageID 207). The prosecution dropped the other two murder charges when the jury was hung on a decision. *Id.*; (ECF No. 8-1, PageID 1129, 1143–44). Petitioner was sentenced to a term of imprisonment of fifteen years to life for felony murder and four years for aggravated burglary, each with an additional three years for the gun specifications, for a total term of twenty-five years to life to be served consecutively. (ECF No. 8-1, PageID 1155–56); (ECF No. 8, PageID 207).

At sentencing on September 24, 2020, the trial judge orally appointed Stephen A. Wolfe as Petitioner's appellate counsel.  (ECF No. 8-1, PageID 1157–58).  Due to a clerical error, Wolfe did not receive notice of the appointment until December 21, 2020, after the deadline to appeal had passed.  (ECF No. 8, PageID 149).  Petitioner through counsel filed a motion for leave to file a delayed appeal on December 22, 2020, *id.* at PageID 148–49, which the state appellate court granted on March 2, 2021, *id.* at PageID 150–51.  Petitioner then appealed his conviction to the state appellate court, *id.* at PageID 159–78, raising the following three assignments of error:

> [1] The verdicts were not supported by sufficient evidence and Appellant's Crim.R. 29 Motion should have been granted.

> [2] The jury's verdicts were against the manifest weight of the evidence.

> [3] The trial court erred when it found that the aggravated burglary and murder charges did not merge for sentencing purposes.

*Id.* at PageID 163.  On March 1, 2022, the state appellate court overruled Petitioner's three assignments of error and affirmed the judgment against Petitioner.  *Id.* at PageID 206–23.

On April 7, 2022, Petitioner, proceeding *pro se*, filed a Notice of Appeal and a Memorandum in Support of Jurisdiction to the Ohio Supreme Court, *id.* at PageID 226–40, raising the following three propositions of law:

> First Proposition of Law: The verdicts were not supported by sufficient evidence and Appellant's Crim. R. 29 Motion should have been granted.

> Second Proposition of Law: The jury's verdicts were against the Manifest Weight of the evidence.

> Third Proposition of Law: The trial court erred when it found that the aggravated burglary and murder charges did not merge for sentencing purposes.

*Id.* at PageID 229, 232–38.  On May 24, 2022, the Ohio Supreme Court declined to accept jurisdiction.  *Id.* at PageID 260.

On June 9, 2022, Petitioner, proceeding *pro se*, filed an Application for Reopening to the state appellate court pursuant to Ohio Appellate Rule 26(B). (ECF No. 8, PageID 261–88) (application to reopen, Petitioner affidavit, and attached exhibits with a time stamp reflecting "2022 Jun 09 9:21 AM"); *id.* at PageID 362 (reflecting filing date on state appellate court docket). In his application to reopen, Petitioner raised the following three grounds for relief:

> [1] The trial court plainly erred by not providing a jury instruction on what the "any criminal offense" element is as it relates to the Aggravated Burglary charge in violation of McKnight's right to due process under the 5th and 14th Amendments to the U.S. Constitution and Article I Section 10 of the Ohio Constitution.

> [2] The trial court abused its discretion when it denied the Appellant's motion in limine to prevent State's witness from testifying to a prejudicial statement [] an unrelated act/offense in violation of Appellant's 5th, 6th, and 14th Amendments of the U.S. Const. and Article I Sec. 10 of the Ohio Const.

> [3] McKnight received ineffective assistance of counsel in violation of the 6th Amendment to the U.S. Constitution and Article I Section 10 of the Ohio Constitution.

*Id.* at PageID 263, 265, 267. On September 8, 2022, the state appellate court denied Petitioner's request to reopen as untimely and, alternatively, on the merits. *Id.* at PageID 299–314.

On October 5, 2022, Petitioner, proceeding *pro se*, appealed that denial to the Ohio Supreme Court, raising the following three propositions of law:

> <u>Proposition of Law I</u>: The trial court plainly erred by not providing a jury instruction on what the "any criminal offense" element is as it relates to the Aggravated Burglary charge.

> <u>Proposition of Law II</u>: The trial court abused its discretion when they denied defendant's exhibits to be admitted in trial.

> <u>Proposition of Law III</u>: Appellant received ineffective assistance of counsel in violation of the 6th Amendment.

*Id.* at PageID 320–28. The Ohio Supreme Court declined to accept jurisdiction on November 29, 2022. *Id.* at PageID 349.

On March 6, 2023, Petitioner, proceeding *pro se*, sought a writ of habeas corpus in this Court, pursuant to 28 U.S.C. § 2254. (Petition, ECF No. 4). In his Petition, he raises the following grounds for relief:

**GROUND ONE:** The verdicts were not supported by sufficient evidence and Appellant's Crim. R. 29 motion should have been granted.

Supporting Facts: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence if believed would convince the average mind of the defendant's guilt beyond a reasonable doubt.

**GROUND TWO:** The jury's verdicts were against the manifest weight of the evidence.

Supporting Facts: Even when a verdict is supported by sufficient evidence, an appellate court may nevertheless conclude that the verdict is against the manifest weight of the evidence because the test under the manifest weight standard is much broader than that for sufficiency of evidence.

**GROUND THREE:** The trial court erred when it found that aggravated burglary and murder charges did not merge for sentencing purposes.

Supporting Facts: When determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, Courts must ask 3 questions when defendants conduct support multiple offenses. (1) where the offenses dissimilar in import or significance, (2) where they committed separately, (3) were they committed with separate animus or motivation.

**GROUND FOUR:** Plain error/Incomplete jury instructions.

Supporting Facts: The trial court plainly errored by not providing a complete jury instruction on what the "any criminal offense element" is as it relates to the aggravated burglary charge even after the jury asked for clarification.

**GROUND FIVE:** Abuse of discretion.

Supporting Facts: The trial court abused its discretion when it denied the appellant's motion in limine to prevent state's witness from testifying to a [prejudice] statement and failed to accept any exhibits from the defendant but accepted new exhibits from the State.

**GROUND SIX:** Ineffective assistance of counsel.

> Supporting Facts: Appellant's counsel failed to support him in a manner that's recommended by the state. Appellant's lawyer failed to discuss the case with him and or call any witness to help his case. Appellant's lawyer allowed whatever evidence the State had to offer be allowed but [barely] fought for his evidence.

*Id.* at PageID 67–72.

On June 29, 2023, Respondent filed the state court record (ECF No. 8), the trial transcript (ECF No. 8-1), and a Return of Writ, arguing that Petitioner's claims should be dismissed as not cognizable in habeas review, dismissed due to procedural default, or denied on the merits. (ECF No. 9). Petitioner did not file a Reply. This matter is now ripe for review.

## II.    Standard of Review

Because this is a habeas corpus case, provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, apply to this case. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA limits the circumstances under which a federal court may grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state court proceeding. Specifically, under the AEDPA, a federal court shall not grant a writ unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors.

The United States Supreme Court and Sixth Circuit Court of Appeals have explained the measure of deference a federal habeas court must afford to a state court adjudication on the merits. *Stermer v. Warren*, 959 F.3d 704, 720 (6th Cir. 2020) (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011); *Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 59293 (6th Cir. 2012)) ("[I]f a

state court decides a claim on the merits, that decision is subject to significant deference."); *Haight v. Jordan*, 59 F.4th 817, 831 (6th Cir. 2023) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)) (noting that the AEDPA "requires that state court determinations 'be given the benefit of the doubt'"). A state court ruling that a "claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer*, 959 F.3d at 721 (quoting *Harrington*, 562 U.S. at 101; *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted). "[E]ven when the state court fails to explain its reasoning . . . the federal court must determine what arguments or theories . . . could have supported the state court's decision and afford those theories AEDPA deference." *Id.* (quoting *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (per curiam) (alteration in original); *Harrington*, 562 U.S. at 102 (internal quotation marks omitted). This standard is "intentionally 'difficult to meet.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013)).

Additionally, this Court's habeas review is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 181. However, "if a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits." *Upshaw v. Stephenson*, 97 F.4th 365, 372 (6th Cir. 2024) (quoting *Stermer* 858 F.3d at 721). "If a habeas petitioner satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies." *Stermer* 858 F.3d at 721. "Instead, the petitioner's claim is reviewed *de novo* as it would

be on direct appeal." *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).  "The district court would also be free to expand the record, provided that the petitioner diligently attempted to present those facts in state court (or alternatively if [he] meets AEDPA's narrow exception for evidence of actual innocence)."  *Id.* at 721–22 (citations omitted).

## III.    Discussion and Analysis

Petitioner filed the instant federal habeas corpus action, raising six grounds for relief.  (Petition, ECF No. 4).  Respondent maintains that the six grounds are either not cognizable, procedurally defaulted, or meritless.  (Return, ECF No. 9).  The undersigned addresses each claim in turn.

### A.    Ground One: Sufficiency of the Evidence

In his first ground for relief, Petitioner asserts that the State failed to present sufficient evidence and the trial court erred when it denied his Rule 29 Motion for Acquittal.  (Petition, ECF No. 4, PageID 67).  As an initial matter, Petitioner does not provide specific, factual arguments for his federal habeas claims.  *See generally id*.  The Supreme Court and Sixth Circuit have explained that a "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Heyward v. Cooper*, 88 F.4th 648, 653–54 (6th Cir. 2023) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "A document filed *pro se* is 'to be liberally construed.'"  *Erickson*, 551 U.S. at 94 (quoting *Gamble*, 429 U.S. at 106).  "[L]iberal construction," though, "does not require a court to conjure allegations on a litigant's behalf."  *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).  To the extent Petitioner intended to raise here the same claims he raised to the state courts, in liberally construing Petitioner's *pro se* filing, the Court looks to those state court claims to discern Petitioner's arguments.

On direct appeal, Petitioner argued that the State failed to prove all required elements for aggravated burglary. (ECF No. 8, PageID 169–73) (detailing Petitioner's sufficiency of the evidence claim he raised to the state appellate court). Specifically, Petitioner maintained that he did not trespass because he was invited into the apartment. *Id.* at PageID 171–72. Without sufficient evidence to prove aggravated burglary, Petitioner argued that the State also failed to provide sufficient evidence for the felony murder charge since aggravated burglary was a required element of that charge. *Id.*

The well-settled standard of review for evaluating the merits of constitutional claims challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). The Supreme Court held in *Jackson* that because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319.

Under the *Jackson* standard, the State is not required to "rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983). It is the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences" from the evidence. *Jackson*, 443 U.S. at 319. "Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or

innocence, or otherwise substitute its opinion for that of the jury." *Zonou v. Warden, Chillicothe Corr. Inst.*, No. 1:12-cv-69, 2013 U.S. Dist. LEXIS 32236, at *37 (S.D. Ohio Mar. 8, 2013) (citing *Jackson*, 443 U.S. at 318–19, n.13; *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011); *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *York v. Tate*, 858 F.2d 322, 329 (6th Cir. 1988) (per curiam)).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." 567 F.3d at 204–05. The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205; *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit emphasized:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner [] is guilty of the offenses with which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based upon the evidence introduced at trial.

*Brown*, 567 F.3d at 205 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

Further, a conviction may be sustained "based upon nothing more than circumstantial evidence." *Tucker*, 541 F.3d at 657 (citing *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)); *James v. Corrigan*, 85 F.4th 392, 396 (6th Cir. 2023) (citing *Cooper v. Chapman*, 970 F.3d 720, 732 (6th Cir. 2020); *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000)) ("States can prove guilt beyond a reasonable doubt using exclusively circumstantial evidence."). A federal habeas

court reviewing sufficiency of evidence claims "assess[es] whether the jury could 'draw reasonable inferences' from the evidence to establish the relevant element of the crime." *James*, 85 F.4th at 396 (quoting *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam)).

As noted, Petitioner claims that the trial court erred by not granting his Rule 29 Motion for Acquittal when the prosecution failed to present sufficient evidence to establish the aggravated burglary and felony murder charges. (Petition, ECF No. 4, PageID 67). In response, Respondent points out that the evidence is viewed in the light most favorable to the prosecution and highlights that the state court decision is afforded two layers of deference. (Return, ECF No. 9, PageID 1208–09) (citations omitted). Respondent concludes that Petitioner failed to show that the state court decision denying this claim was unreasonable, suggesting that the claim is "nothing more than a disagreement with the credibility determinations of the jury." *Id.* at PageID 1211–12.

The state appellate court overruled this claim on direct appeal, providing the following:

{¶ **18**} "In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Neil*, 10th Dist. No. 14AP-981, 2016-Ohio-4762, ¶ 94, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "Where the evidence [of guilt], 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt,' it is sufficient to sustain a conviction." *Id.*; *see also, e.g.*, *State v. Williams*, 10th Dist. No. 19AP-824, 2021-Ohio-3006, ¶ 38.

{¶ **19**} In assessing Mr. McKnight's first assignment of error, we therefore examine the record to see whether the state adduced sufficient evidence to support his convictions for aggravated burglary and felony murder, both with gun specifications. It did.

{¶ **20**} As relevant here, Ohio's aggravated burglary statute specifies that: "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another; [or] (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control." R.C.

14

2911.11(A). The trial court charged the jury consistent with that statute, and more specifically advised that before they could find Mr. McKnight guilty, jurors had to find beyond a reasonable doubt that he had "trespassed by force or stealth" with purpose to commit a criminal offense and either "recklessly inflicted * * * or attempted to inflict * * * physical harm upon * * * Martin Harris and/or [Ms. A.C.], and/or [Mr. McKnight] had * * * a firearm on or about his person or under his control." Tr. at 709 (further defining certain terms). With regard to the gun specification attached to that count, the trial court instructed the jury that if it concluded that Mr. McKnight was guilty of aggravated burglary, it further had to "decide whether the state has proved beyond a reasonable doubt that [Mr. McKnight] had a firearm on or about his person or under his control while committing the Aggravated Burglary and did display the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the Aggravated Burglary." *Id.* at 712-13.

{¶ 21} Mr. McKnight's brief to us does not contest the sufficiency of the evidence that supported both the "deadly weapon or dangerous ordnance" element of the second, alternative prong of the aggravated burglary statute and the attached gun specification. Indeed, his brief contends that proof showed "Harris tried to grab McKnight's gun, a MAC-11 Cobray." Appellant's Brief at 3. Nor does Mr. McKnight contest that the state offered sufficient proof that the apartment was occupied at the time of the event, and that he was there to commit a criminal offense. Rather, he contends that he "was an invited guest and thus, by definition, was not trespassing" in Ms. A.C.'s apartment. *Id.* at 8 (adding, "they knocked and were let into the apartment").

{¶ 22} But one can trespass in a home even if one knocks and the door is opened (after one removes one's finger from the peephole). As the trial court advised the jury, "[a] person trespasses when, without privilege to do so, that person knowingly enters *or remains* on the premises of another." Tr. at 710 (emphasis added); *see also* R.C. 2911.21(A)(1). "Privilege," as the trial court further instructed, "means an immunity, license, or right conferred by law, or bestowed by express or implied grant, or arising out of status, position, office, or relationship, or growing out of necessity." Tr. at 710; *see also* R.C. 2901.01(A)(12). Starting to open one's door is not an express or implied grant to those entering to engage thereafter in any conduct without limit. *See, e.g.*, *State v. Steffen*, 31 Ohio St.3d 111, 115 (1987) ("a privilege once granted may be revoked. * * * * Under the circumstances of this case, even assuming lawful initial entry, the jury was justified in inferring from the evidence that appellant's privilege to remain in [the] home terminated the moment he commenced his assault"); *State v. Cutts*, 5th Dist. No. 2008CA00079, 2009-Ohio-3563, ¶ 181 ("Where a defendant commits an offense against a person in the person's private dwelling, the defendant forfeits any privilege, becomes a trespasser, and can be culpable for aggravated burglary."); *State v. Tyson*, 10th Dist. No. 10AP-830, 2011-Ohio-4981, ¶ 26 ("Even if one or more of the men were initially invited inside the apartment, that invitation was revoked when they began stealing items.").

{¶ 23} Ms. A.C.'s testimony, if believed, would itself provide more than sufficient basis to find that Mr. McKnight trespassed in her residence. And the *method* of that trespass—by "force," with "stealth" not relevant under the proof adduced and with the jury not having been charged as to "deception"—is not directly contested by Mr. McKnight's brief, which focuses solely on the means of entry: "they knocked and were let into the apartment." *See* Appellant's Brief at 8-9. Ms. A.C. testified that immediately after she opened the door, "it was, like, boom" and Mr. McKnight "bust through with a gun." Tr. at 202, 205. "I didn't even get the door all the way open before they bust through, knocking me in behind the door." *Id.* at 205. She was "slammed in against the wall," and when she screamed, she says, Mr. McKnight and his colleague told her: "We want the money. Shut the fuck up." *Id.* at 207, 209. When Mr. McKnight slammed in through the door with a gun and triggered Ms. A.C.'s screams (on this account), he lost any privilege he had to enter or remain in the dwelling. He cannot seriously be heard to argue that at that point, simply because the door had been answered, he was "an invited guest." *Compare* Appellant's Brief at 8. On these facts, he had forfeited any "guest" status even before he and his colleague approached Mr. Harris and (on Ms. A.C.'s testimony) demanded: "MF, give me the money, give me the shit. Give me the shit. [And so forth.]" *Compare* Tr. at 203, 209.

{¶ 24} We overrule Mr. McKnight's first assignment of error to the extent that it challenges the sufficiency of the state's evidence with respect to his aggravated burglary conviction and the related gun specification.

{¶ 25} The jury also convicted Mr. McKnight of felony murder with a gun specification. R.C. 2903.02(B) provides in relevant part: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." Aggravated burglary is a felony of the first degree, R.C. 2911.11(B), and it is an offense of violence, R.C. 2901.01(A)(9)(a). Mr. McKnight's only argument that his felony murder conviction with the specification was not supported by sufficient evidence is that "because aggravated burglary is an element of felony murder" in these circumstances, and because there was insufficient evidence to support the aggravated burglary charge (under his "invited guest" postulate), "the state did not make its prima facie case for [the felony murder] count either." Appellant's Brief at 8. But because the state did present sufficient evidence to support its aggravated burglary charge, Mr. McKnight's syllogism falls apart. We overrule his first assignment of error in full.

(ECF No. 8, PageID 211–14).

Applying the required double layer of deference, the state appellate court's denial of this claim was neither contrary to nor an unreasonable application of *Jackson*. In overruling this claim

on direct appeal, the state appellate court construed the facts in the light most favorable to the prosecution. *Id.* at PageID 211 (quoting *State v. Neil*, 10th Dist. No. 14AP-981, 2016-Ohio-4762, ¶ 94; *State v. Jenks*, 61 Ohio St. 3d 259 (1991), para. 2 of syllabus); *Jackson*, 443 U.S. at 319.  The state appellate court detailed that the jury heard A.C.'s account of the incident, which "if believed, would itself provide more than sufficient basis to find that [Petitioner] trespassed in her residence." (ECF No. 8, PageID 213).  A.C. testified that as soon as she opened the door, Petitioner "bust through with a gun," and further noted: "I didn't even get the door all the way open before they bust through, knocking me in behind the door."  (ECF No. 8-1, PageID 576); (ECF No. 8, PageID 213).  The state appellate court concluded that the record contained sufficient evidence to support Petitioner's convictions, emphasizing that Petitioner "cannot seriously be heard to argue that at that point, simply because the door had been answered, he was 'an invited guest.'"  (ECF No. 8, PageID 214).

Petitioner maintains that he was an invited guest because after he or the unidentified person knocked on the door, A.C. opened the door with Harris's approval.  *Id.* at PageID 172.  But construing the facts in the light most favorable to the prosecution, as the state appellate court pointed out, "one can trespass in a home even if one knocks and the door is opened (after one removes one's finger from the peephole)."  *Id.* at PageID 213.  Further, the state appellate court determined that even if Petitioner was at first welcomed into the apartment as an invited guest, any permission to enter was revoked when he "slammed in through the door with a gun and triggered Ms. A.C.'s screams," thus establishing the trespass element of the aggravated burglary charge.  *Id.* at PageID 214.  Notably, the state appellate court highlighted that "[o]n these facts, he had forfeited any 'guest' status even before he and his colleague approached Mr. Harris and (on Ms. A.C.'s testimony) demanded: 'MF, give me the money, give me the shit.  Give me the shit.  [And so

forth.].'" *Id.* Whether or not A.C. or the State's other witnesses were credible is irrelevant because this Court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute its judgment for that of the jury." *Brown*, 567 F.3d at 205 (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)). Construing A.C.'s testimony in the light most favorable to the prosecution, including that Petitioner, while wielding a gun, pushed the door into A.C. before she could fully open it, a reasonable factfinder could determine that the State presented sufficient evidence to convict Petitioner of aggravated burglary. Thus, the state appellate court's analysis in overruling this claim was not unreasonable because it followed *Jackson* and progeny.

As to the felony murder conviction, Petitioner appears to argue that the jury lacked sufficient evidence to convict him of felony murder because the State presented insufficient evidence to convict him of the underlying offense of aggravated burglary. (ECF No. 8, PageID 171–72). Specifically, on direct appeal, Petitioner noted the following:

> The key inquiry here is whether there was an aggravated burglary. Because the jury acquitted McKnight of the aggravated robbery, the underlying offense for the felony murder must have been aggravated burglary, so the two counts for which he was convicted as well as the specifications are wholly dependent upon there being a conviction on aggravated burglary.

*Id.* at PageID 171. As detailed above, the jury heard sufficient evidence to convict Petitioner of aggravated burglary, so it follows that the jury had sufficient evidence to also convict Petitioner of felony murder. The state appellate court found the same, noting that "because the state did present sufficient evidence to support its aggravated burglary charge, Mr. McKnight's syllogism falls apart." *Id.* at PageID 214. With no contentions to otherwise consider, this Court finds that the state appellate court was not unreasonable in concluding that the record contained sufficient evidence to convict Petitioner for both the aggravated burglary and felony murder charges. Given the double layer of deference afforded to the jury verdict and the state appellate court decision,

neither layer is unreasonable.  *Brown*, 567 F.3d at 205; *Davis*, 658 F.3d at 531.  Consequently, the

trial court did not err in denying Petitioner's Rule 29 Motion for Acquittal.

　　　　Accordingly, the undersigned **RECOMMENDS** that this claim be **DENIED** on the merits.

### B.　　　Ground Two: Manifest Weight of the Evidence

　　　　In his second ground for relief, Petitioner asserts that the aggravated burglary and felony

murder convictions were against the manifest weight of the evidence.  (Petition, ECF No. 4,

PageID 69).  Respondent counters that this claim is not cognizable in a federal habeas action.

(Return, ECF No. 9, PageID 1171–73).  The state appellate court overruled this claim on direct

appeal, concluding that in consideration of the record, "we cannot say that the jury clearly lost its

way and created a manifest miscarriage of justice."  (ECF No. 8, PageID 216).

　　　　The Sixth Circuit and other courts in this District have found that a "manifest-weight claim

is not cognizable on federal habeas review because it is a state-law argument."  *E.g.*, *Thomas v.*

*Taskila*, No. 23-1423, 2023 U.S. App. LEXIS 30660, at *17 (6th Cir. Nov. 16, 2023) (citing *Estelle*

*v. McGuire*, 502 U.S. 62, 67–68 (1991); *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir.

2007)); *Myers v. Haviland*, No. 17-4220, 2018 U.S. App. LEXIS 38924, at *5 (6th Cir. Apr. 12,

2018) (citing *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1976)) ("[S]uch a claim does not

present a federal constitutional question and is not cognizable on federal habeas review."); *Stokes*

*v. Warden*, No. 2:22-cv-3921, 2023 WL 6961414, at *11 (S.D. Ohio Oct. 20, 2023) (citing *Ross v.*

*Pineda*, No. 3:10-cv-391, 2011 WL 1337102, at *2–3 (S.D. Ohio Apr. 7, 2011)) ("Manifest weight

of the evidence is a matter of pure state law, and thus, is not a cognizable claim in habeas.").

Further, this Court "does not reweigh the evidence or redetermine the credibility of the witnesses

whose demeanor has been observed by the trial court" because in federal habeas proceedings, "[i]t

is the province of the factfinder to weigh the probative value of the evidence and resolve any

conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citations omitted) ("An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims."); *see James v. Corrigan*, 85 F.4th 392, 397 (6th Cir. 2023) (citing *Matthews*, 319 F.3d at 788) ("And testimonial credibility is outside the scope of appellate review. . . . Juries choose which witnesses and statements to believe, and a court can't substitute its judgments for a jury's.").

Petitioner here asserts a state law claim that his convictions were against the manifest weight of the evidence. (Petition, ECF No. 4, PageID 69). It is not within this Court's purview to reassess the weight and credibility of evidence presented at trial—Petitioner therefore submits a non-cognizable claim. *Thomas*, 2023 U.S. App. LEXIS 30660, at *17 (citing *Estelle*, 502 U.S. at 67–68; *Nash*, 258 F. App'x at 764 n.4); *Matthews*, 319 F.3d at 788.

The undersigned **RECOMMENDS** that this claim be **DISMISSED** as not cognizable.

C.     **Ground Three: Trial Court Error – Declining to Merge Charges for Sentencing**

In his third ground for relief, Petitioner contends that the trial court erred in failing to merge the aggravated burglary and felony murder charges for sentencing purposes. (Petition, ECF No. 4, PageID 70). Respondent asserts that Petitioner's claim "that the offenses of conviction are allied" is not cognizable in federal habeas proceedings. (Return, ECF No. 9, PageID 1174) (citing *Jackson v. Smith*, 745 F.3d 206, 214 (6th Cir. 2014)). Respondent posits that habeas relief is warranted only in situations implicating double jeopardy issues, which is not the case here. *Id.* Respondent also points to the state appellate court decision, noting that Petitioner's sentences were within the statutory limits and the court was not unreasonable in its denial of this claim. *Id.* at PageID 1174–80.

The state appellate court overruled this claim on direct appeal after applying the test laid out in *State v. Ruff*, 143 Ohio St. 3d 114, 2015-Ohio-995, 34 N.E.3d 892. (ECF No. 8, PageID 216–23). The state appellate court explained: "R.C. 2941.25(B) sets forth three categories in which there can be multiple punishments: (1) offenses that are dissimilar in import, (2) offenses similar in import but committed separately, and (3) offenses similar in import but committed with separate animus." *Id.* at PageID 217 (quoting *Ruff*, 2015-Ohio-995, at ¶ 20). The court found that "Mr. McKnight's conduct in invading Ms. A.C.'s apartment while in possession or control of a gun and with the purpose to commit a felony **caused harm separate from the shooting death** of Mr. Harris. And it also involved at least one separate victim." *Id.* at PageID 222–23 (citing *Ruff*, 2015-Ohio-995, at ¶ 23) (emphasis added); *see id.* at PageID 219 ("On this record, the aggravated burglary conviction did not hinge on the fact that Mr. Harris was shot and died."). The state appellate court overruled this claim "[b]ecause the aggravated burglary and the felony murder were offenses of dissimilar import or significance under the controlling *Ruff* analysis, with each offense generating its own separate and identifiable harm." *Id.* at PageID 223.

Petitioner appears to argue that the state trial court erred by failing to merge the aggravated burglary and felony murder charges pursuant to Ohio Revised Code ("O.R.C.") § 2941.25 and the test set forth in *Ruff*, which implicates state laws. (Petition, ECF No. 4, PageID 70); (ECF No. 8, PageID 175–78) (detailing Petitioner's claim raised on direct appeal). Such a claim does not raise a question regarding a violation of the United States Constitution, or federal laws or treaties, and is therefore not cognizable in federal habeas proceedings. *Estelle*, 502 U.S. at 67–68 ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Tate v. Bunting*, No. 1:14-cv-2582, 2016 U.S. Dist. LEXIS 94537, at *2829 (N.D. Ohio May 31, 2016) (citing *Austin v. Jackson*, 213 F.3d 298, 300

(6th Cir. 2000); *Kipen v. Renico*, 65 F. App'x 958, 959 (6th Cir. 2003)) ("Specifically, challenges to a state court's interpretation and application of state sentencing laws generally are not cognizable in federal habeas corpus.").

A state-law claim of this nature supports federal habeas relief only to the extent that the claim implicates the Double Jeopardy Clause. *See Jackson v. Smith*, 745 F.3d 206, 208 (6th Cir. 2014) (noting that the Double Jeopardy clause prohibits "multiple punishments for the same offense"). Petitioner does not appear to argue such an issue. *See* Petition, ECF No. 4. To the extent this type of claim does implicate the Double Jeopardy Clause, which the undersigned notes is not the case here, the state appellate court decision denying this claim would still be afforded deference under the AEDPA. *Jackson v. Smith*, 745 F.3d at 213–15; *Pettus v. Warden*, No. 1:20-cv-187, 2021 WL 3710508, at *4 (S.D. Ohio Aug. 20, 2021) (citing *Bradshaw v. Richey*, 546 U.S. 74 (2004) (per curiam)) (concluding that the federal habeas court reviewing a merger claim "would be bound" by the state appellate court's decision that the petitioner's offenses were committed separately).

Accordingly, the undersigned **RECOMMENDS** that this claim be **DISMISSED** as not cognizable.

### D. Ground Four: Trial Court Error – Jury Instructions

In his fourth ground for relief, Petitioner asserts that the trial court plainly erred by failing to provide further jury instructions on the "any criminal offense" element for aggravated burglary under O.R.C. § 2911.11. (Petition, ECF No. 4, PageID 72). Petitioner did not raise this claim on direct appeal. *See* ECF No. 8, PageID 163 (listing assignments of error raised on direct appeal). Petitioner did, however, raise this as an underlying claim to the state appellate court in his Rule

26(B) application to reopen on the basis of ineffective assistance of appellate counsel for failing to raise the claim on direct appeal.  *Id.* at PageID 263–65.

Respondent maintains that this claim does not warrant federal habeas relief as it attacks a state law without implicating a federal constitutional right.  (Return, ECF No. 9, PageID 1180–81).  Respondent points out that to rise to the level of a constitutional violation, the jury instruction must have made the trial fundamentally unfair, a higher burden than "required to demonstrate plain error on appeal."  *Id.* (quoting *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000)).

In the alternative, Respondent asserts that this claim is procedurally defaulted because Petitioner "fail[ed] to comply with Ohio's long-standing contemporaneous objection rule," which is an adequate and independent state ground to preclude federal habeas relief.  *Id.* at PageID 1194, 1199 (citations omitted).  Respondent contends that the procedural default is "compounded" by the fact Petitioner failed to raise this claim on direct appeal, and that Petitioner cannot show cause and prejudice to excuse the default.  *Id.* at PageID 1200.  Further, Respondent argues that Petitioner filed an untimely Rule 26(B) application, *id.* at PageID 1202; and notes that this claim was not preserved for federal habeas review, *id.* at PageID 1201 (citations omitted).  Respondent contends that the state appellate court concluded the same, which is another adequate and independent state ground to preclude federal habeas relief.  *Id.* at PageID 1202–03.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c).  If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure

to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (citations omitted).

To fairly present a claim in state court, a petitioner is required to "present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). If the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court. In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the Supreme Court found that "contentions of federal law which were *not* resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case because they are "procedurally defaulted." A "common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

The Supreme Court defined the "Procedural Default Doctrine" for federal habeas proceedings as barring federal habeas relief in certain instances, stating:

> This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. *This rule applies whether the state law ground is substantive or procedural*. In the context of direct review of a state court judgment, the independent and adequate state ground doctrine is jurisdictional. *Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory*.

\* \* \*

*The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds.*

*Thompson*, 501 U.S. at 729–30 (emphasis added and internal citations omitted). Failing to honor state procedural rules that impact review by the state courts "deprives the [state] appellate court of an opportunity to review trial error, and '[undercuts] the State's ability to enforce its procedural rules.'" *Murray v. Carrier*, 477 U.S. 478, 491 (1986) (quoting *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

There are two types of procedural default in habeas actions:

First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. [*Lundgren v. Mitchell* 440 F.3d 754, 763 (6th Cir. 2006)]; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*

Second, a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-7, 119 S.Ct. 1728, 144 L. Ed. 2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L. Ed. 2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. at 731-2.

*Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

The Sixth Circuit utilizes the *Maupin* four-prong test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

(1) Did the petitioner fail to comply with a state procedural rule that applies to petitioner's claim?

(2) Did the state court actually enforce that procedural rule as the basis for its refusal to address the merits of the petitioner's claim?

25

(3) Is the state rule that petitioner violated an adequate and independent state ground to foreclose review by a federal habeas court?

(4) If yes to all three, the claim is procedurally defaulted unless petitioner can excuse the default with evidence of cause and prejudice or by showing that failing to review the claim would create a fundamental miscarriage of justice.

*See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (citations omitted); *Lundgren v. Mitchell*, 440 F.3d 754, 763–64 (6th Cir. 2006); *McNeill v. Bagley*, 10 F.4th 588, 595–96 (6th Cir. 2021). To excuse the default with cause and prejudice, "the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error." *Buell*, 274 F.3d at 348 (citing *Maupin*, 785 F.2d at 138). To establish cause, a petitioner must show that "some objective factor external to his defense impeded [the petitioner's] ability to comply with the state's procedural rule." *Bies v. Sheldon*, 775 F.3d 386, 396 (6th Cir. 2014) (citing *Murray*, 477 U.S. at 488). The petitioner bears the "burden of showing cause and prejudice." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)). To excuse the default showing a fundamental miscarriage of justice, the petitioner must demonstrate he is actually innocent through "new reliable evidence." *Dufresne v. Palmer*, 876 F.3d 248, 255–56 (6th Cir. 2017) (citing *Schlup v. Delo*, 513 U.S. 298, 321, 324 (1995)).

In analyzing procedural default under the *Maupin* test, courts first look to whether the Petitioner failed to comply with a state procedural rule, and whether the state court actually enforced that procedural bar. *Maupin*, 785 F.2d at 138; *Lundgren*, 440 F.3d at 763. The relevant applicable rule here is that claims appearing on the face of the record must be raised on direct appeal or they will be barred by Ohio's *res judicata* rule. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (citations omitted) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res

26

judicata."); *Hand v. Houk*, 871 F.3d 390, 408–09 (6th Cir. 2017) (citations omitted).  Petitioner violated that rule by failing to raise this claim on direct appeal since the jury instruction claim is based on evidence that appears on the face of the record.  (ECF No. 8-1, PageID 1122–26).  Petitioner's failure to comply with the procedural rule satisfies *Maupin's* first prong.

The state appellate court actually enforced that rule when Petitioner attempted to raise the claim in a Rule 26(B) Application for Reopening—the procedure in Ohio for raising claims of ineffective assistance of appellate counsel.  In considering Petitioner's Rule 26(B) application, the state appellate court did not analyze the jury instruction claim on the merits as a standalone claim, rather the court analyzed it as an instance of ineffective assistance of appellate counsel for failing to raise the claim on direct appeal.[2]  (ECF No. 8, PageID 306–11).  The state appellate court's enforcement of the procedural rule satisfies *Maupin's* second prong.  It is well settled that Ohio's *res judicata* rule is an adequate and independent state ground to preclude federal habeas relief, satisfying *Maupin's* third prong.  *Hand*, 871 F.3d at 409 (citing *Hanna v. Ishee*, 694 F.3d 596, 614 (6th Cir. 2012)).  Because the first three prongs of the *Maupin* test have been met, Petitioner's claim is barred by procedural default absent a showing of cause and prejudice or a fundamental miscarriage of justice.[3]  Before addressing that issue, however, the Court turns to Petitioner's inclusion of this claim in his Rule 26(B) application for reopening.

Instead of raising this claim on direct appeal, Petitioner raised it in his Rule 26(B) application to reopen based on ineffective assistance of appellate counsel.  (ECF No. 8, PageID 263–65).  But doing so failed to preserve the claim for habeas review because the only claims that

---

[2] Notably, the state appellate court first denied the application as untimely, offering the merits analysis as an alternative ruling, discussed in further detail below.

[3] Because Ground Four is procedurally defaulted on this basis alone, the Court need not consider Respondent's alternative contemporaneous-objection argument.

are preserved in a Rule 26(B) application are claims of ineffective assistance of appellate counsel. In other words, enumerated instances of ineffective assistance of appellate counsel raised in a Rule 26(B) application, such as the failure to challenge the omission of a jury instruction, are not preserved as freestanding claims because "'the two claims are analytically distinct.'" *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 218 (6th Cir. 2019) (quoting *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)). When a petitioner files a Rule 26(B) application with the state appellate court, it preserves for habeas review *only* the ineffective assistance of appellate counsel claim. *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012) (quoting *Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001)). Otherwise, allowing a defendant to raise a substantive claim in a Rule 26(B) application "would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel." *Id.* Petitioner, therefore, did not preserve the underlying jury instruction claim by including it in his Rule 26(B) application. *Smith*, 780 F. App'x at 218 (quoting *Davie*, 547 F.3d at 312; *White*, 431 F.3d at 526).

Returning to the default of this claim due to Petitioner's failure to raise it on direct appeal, Petitioner does not offer any cause to excuse the procedural default of Ground Four. *See* Petition, ECF No. 4. Given Petitioner's *pro se* status, however, the undersigned construes this ground for relief, and Grounds Five and Six below, as if Petitioner intended to raise the same claims raised in his Rule 26(B) application and thus assert the ineffective assistance of appellate counsel as cause. *See* ECF No. 8, PageID 261–68; *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But, as Respondent maintains, ineffective assistance of appellate counsel cannot serve as cause here because those claims were themselves procedurally

defaulted by being raised in a Rule 26(B) application that the state appellate court denied as untimely.[4] (Return, ECF No. 9, PageID 1202–03). "[A] petitioner cannot use the ineffective assistance of appellate counsel as cause to excuse a procedurally defaulted claim when he has failed to present the claim of the ineffectiveness of appellate counsel as an independent claim or has otherwise procedurally defaulted that claim." *Tomlinson v. Bradshaw*, No. 5:13-cv-1808, 2015 WL 106060, at *17 (N.D. Ohio Jan. 7, 2015) (citations omitted); *Ramirez*, 2016 WL 11848848, at *4 (citing *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)) (pointing out that an ineffective assistance of counsel claim "may constitute cause only if the ineffective assistance claim itself was not procedurally defaulted, unless cause and prejudice for such default exists"); *Williams*, 460 F.3d at 799–800 n.1. The Court thus turns to whether Petitioner defaulted the only cause argument he can offer.

Ohio Appellate Rule 26(B) allows a criminal defendant to file an application for "reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel." Ohio App. R. 26(B)(1). An application under Rule 26(B) must be "filed in the court of appeals where the appeal was decided within ninety days" of the appellate court decision, unless good cause is shown for a later filing. *Id.*; *Ramirez v. Richard*, No. 16-3106, 2016 WL 11848848, at *4–5 (6th Cir. 2016) (citing *Fautenberry v. Mitchell*, 515 F.3d 614, 639–40 (6th Cir. 2008); *Goldberg v. Maloney*, 692 F.3d 534, 538 n.3 (6th Cir. 2012)). Petitioner failed to file his Rule 26(B) application within ninety days of the state appellate court's direct appeal decision, a procedural bar the state appellate court actually enforced. ECF 8, PageID 300–01;

---

[4] The state appellate court's alternative merits review of Petitioner's Rule 26(B) application did not waive the procedural default occasioned by his untimely filing of the application. *See Seymour v. Walker*, 224 F.3d 542, 555 n.5, 557 (6th Cir. 2000).

Ohio App. R. 26(B). The first two prongs of *Maupin* are thus met as to Petitioner's appellate counsel cause argument. *Maupin*, 785 F.2d at 138; *Lundgren*, 440 F.3d at 763.

The third prong of the *Maupin* test requires the procedural rule to be an adequate and independent state ground to preclude habeas relief. *Maupin*, 785 F.2d at 138; *Lundgren*, 440 F.3d at 763. The Sixth Circuit has found that filing an untimely Rule 26(B) application is an adequate and independent state ground to preclude federal habeas relief. *Baker v. Bradshaw*, 495 F. App'x 560, 566 (6th Cir. 2012) (citing *Monzo v. Edwards*, 281 F.3d 568, 577–78 (6th Cir. 2002); *Gross v. Warden*, 426 F. App'x 349, 359 (6th Cir. 2011)); *Wilson v. Hurley*, 382 F. App'x 471, 476 (6th Cir. 2010) (quoting *Fautenberry*, 515 F.3d at 640) (additional citations omitted). Thus, the third prong of *Maupin* is met.

Because Petitioner has failed to present any cause for the default of his ineffective-assistance-of-appellate-counsel claim, the fourth prong of *Maupin* is also met. *See Edwards*, 529 U.S. at 453 ("To hold . . . that an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted is not to say that that procedural default may not *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim."). Petitioner's ineffective assistance of appellate counsel claim is thus defaulted and cannot serve as cause to excuse the defaulted jury instruction claim. *Edwards*, 529 U.S. at 453; *Ramirez*, 2016 WL 11848848, at *4–5 (citing *Fautenberry*, 515 F.3d at 639–40; *Goldberg*, 692 F.3d at 538 n.3); *Williams*, 460 F.3d at 799–800 n.1; *Tomlinson*, 2015 WL 106060, at *17. As Petitioner has not argued that a miscarriage of justice excuses this default, Ground Four is procedurally barred. *See Dufresne*, 876 F.3d at 255–56.

In any event, even if the Court would consider Ground Four on the merits, an error in jury instructions alone is "not a basis for habeas relief." *Scott v. Mitchell*, 209 F.3d 854, 875 (6th Cir.

2000) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991)).  "To warrant habeas relief, the jury instructions must have been so infirm that they rendered the entire trial fundamentally unfair." *Steiner v. King*, No. 23-1458, 2023 U.S. App. LEXIS 30952, at *7–8 (6th Cir. Nov. 20, 2023) (quoting *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998)); *Scott*, 209 F.3d at 882; *Hess v. Eberlin*, No. 2:04-cv-1144, 2006 U.S. Dist. LEXIS 99991, at *22–23 (S.D. Ohio Mar. 20, 2006) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551–52 (6th Cir. 1986); *Thomas v. Arn*, 704 F.2d 865, 868–69 (6th Cir. 1982)) ("Errors in jury instructions cannot be raised in federal habeas corpus unless they deprive petitioner of a fundamentally fair trial."). "An ambiguous, potentially erroneous instruction violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly."  *Coe*, 161 F.3d at 329 (citing *Estelle*, 502 U.S. at 72; *Austin v. Bell*, 126 F.3d 843, 846 (6th Cir. 1997)).  Omissions or incomplete instructions are less likely to be prejudicial than a misstatement of law.  *Hess*, 2006 U.S. Dist. LEXIS 99991, at *23 (citing *Henderson*, 431 U.S. at 155).

Petitioner has failed to demonstrate that the trial court provided erroneous jury instructions, let alone that any potential error was fundamentally unfair.  Petitioner asserts that the trial judge should have provided further instructions when the jury inquired what constituted "any criminal offense" under O.R.C. § 2911.11 to prevent confusion.  (ECF No. 8, PageID 263–64).  However, as the state appellate court determined, the Ohio Jury Instruction guide *recommends* or *prefers* a trial court to define "any criminal offense"—not that it is required under Ohio law.  (ECF No. 8, PageID 307–08) (quoting *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995 (plurality opinion)) ("Nevertheless, we do not require this instruction in every case.").  Additionally, as Respondent points out and the state appellate court explained, any error was an "invited error" attributed to Petitioner, which does not constitute a trial court error.  *See* Return,

ECF No. 9, PageID 1194–95 (quoting *Bavelis v. Doukas (In re Bavelis)*, 773 F.3d 148, 157 (6th Cir. 2014)) (citing *Schoenberger v. Russell*, 290 F.3d 831, 835 (6th Cir. 2002); *Fields v. Bagley*, 275 F.3d 478, 486 (6th Cir. 2001)); (ECF No. 8, PageID 310) ("[W]e also are mindful of the doctrine of invited error.  Under the invited-error doctrine, [a] party will not be permitted to take advantage of an error which he himself invited or induced.") (citations and quotation marks omitted).  Any issue with the jury instructions does not rise to the high bar of being fundamentally unfair.  Thus, Petitioner has failed to show federal habeas relief is warranted.  *Steiner*, 2023 U.S. App. LEXIS 30952, at *7–8; *Coe*, 161 F.3d at 329; *Scott*, 209 F.3d at 875, 882; *Henderson*, 431 U.S. at 155.

The undersigned **RECOMMENDS** that this claim be **DISMISSED** due to procedural default and, alternatively, as not cognizable in federal habeas review.

### E. Ground Five: Trial Court Abuse of Discretion – Evidentiary Rulings

In his fifth ground for relief, Petitioner contends that the state trial court abused its discretion when it denied Petitioner's motion in limine and when it failed to admit defense exhibits. (Petition, ECF No. 4, PageID 72).  As with Ground Four above, Petitioner did not raise this claim on direct appeal, *see* ECF No. 8, PageID 163 (listing assignments of error raised on direct appeal), but instead raised it in his Rule 26(B) application to the state appellate court as an underlying claim to an ineffective assistance of appellate counsel claim, *id.* at PageID 265–67.  Based on the claim he raised in his Rule 26(B) application, Petitioner appears to assert here that the trial court improperly denied his motion in limine, "allow[ing] State's witness [S.A] to testify about a 'unrelated murder charge' . . . along with 'unrelated and inaccurate gang ties,'" which suggested a negative view of Petitioner to the jury.  *Id.* at PageID 265–66.  Petitioner pointed out in his Rule 26(B) application that the "unrelated murder case" was prosecuted by Brian Simms, who also

prosecuted the present case. *Id.* at PageID 266. Petitioner also maintained that the trial court improperly excluded defense exhibits for the jury's consideration. *Id.*

Respondent contends that this claim is not cognizable under federal habeas review. (Return, ECF No. 9, PageID 1186–88) (citations omitted). Respondent, in the alternative, asserts that this claim was not preserved for federal habeas review since Petitioner merely raised it as an underlying instance of appellate counsel ineffectiveness in a Rule 26(B) application. *Id.* at PageID 1201 (citing *Scott v. Houk*, 760 F.3d 497, 505 (6th Cir. 2014); *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)). Respondent maintains that the state appellate court also denied the application as untimely. *Id.* at PageID 1202. Further, Respondent posits that Petitioner cannot excuse the default with ineffective assistance of appellate counsel because that claim "has been defaulted and is meritless." *Id.* at PageID 1203.

As noted in analyzing Ground Four above, a Rule 26(B) application does not preserve the underlying claims for federal habeas review. *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 218 (6th Cir. 2019) (quoting *Davie*, 547 F.3d at 312; *White*, 431 F.3d at 526). Additionally, Petitioner filed an untimely Rule 26(B) application and cannot excuse this defaulted claim with a defaulted ineffective assistance of appellate counsel claim. *Edwards*, 529 U.S. at 453; *Ramirez*, 2016 WL 11848848, at *4–5 (citing *Fautenberry*, 515 F.3d at 639–40; *Goldberg*, 692 F.3d at 538 n.3); *Williams*, 460 F.3d at 799–800 n.1; *Tomlinson*, 2015 WL 106060, at *17.

Moreover, this claim does not rise to the level of a cognizable constitutional violation to warrant federal habeas relief. *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) (citing *Collier v. Lafler*, 419 F. App'x 555, 558 (6th Cir. 2011)) ("In general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review."); *Wilson v. Sheldon*, 874 F.3d 470, 475–76 (6th Cir. 2017) (quoting *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001)) ("A

state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights."); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (citations omitted) ("Errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus."). As noted, Petitioner contends that the trial court abused its discretion in denying his motion in limine to prevent the State's witness from testifying about a prior bad act and potential gang affiliation. (Petition, ECF No. 4, PageID 72); (ECF No. 8, PageID 265–67) (detailing Petitioner's same claim raised as an instance of ineffective assistance of appellate counsel in his Rule 26(B) application to reopen). Petitioner also maintains that the trial court abused its discretion when it failed to admit certain defense exhibits. (ECF No. 8, PageID 266–67).

"Abuse of discretion is not a denial of due process." *Cultrona v. Warden*, No. 2:22-cv-1965, 2022 WL 13788864, at *6–7 (S.D. Ohio Oct. 24, 2022) (citing *Sinistaj v. Burt*, 66 F.3d 804 (6th Cir. 1995)). Generally, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Wilson*, 874 F.3d at 475–76 (quoting *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). Here, the state trial court granted in part Petitioner's motion in limine, excluding testimony about any potential gang affiliation because it had not come up in the State's theory at that point. (ECF No. 8-1, PageID 653). The State also agreed to limit testimony at issue regarding whether Petitioner had gotten away with a previous murder. *Id.* at PageID 651. In denying part of Petitioner's motion regarding his alleged statement that the "victim deserved what he got," the state trial court explained that the statement was permitted because it "goes to consciousness of guilt." *Id.* at PageID 653–54. Additionally, the state trial court excluded the defense exhibits because Detective

Mall testified to the relevant issues and the "documents contain[ed] a whole host of other information and wording that goes well beyond just eliciting the fact that someone could have obtained this information by glancing at the discovery packet." *Id.* at PageID 931.  The court concluded that the documents contained hearsay and did not find that they fit within a hearsay exception. *Id.* at PageID 932–36 (detailing state trial court colloquy about the defense exhibits in question); *id.* at PageID 942–44 (ruling that the defense exhibits contained inadmissible hearsay). Petitioner has not shown that these state trial court evidentiary rulings rise to a constitutional violation. *Moreland*, 699 F.3d at 923 (citing *Collier*, 419 F. App'x at 558); *Wilson*, 874 F.3d at 475–76; *Bugh*, 329 F.3d at 512.

Accordingly, the undersigned **RECOMMENDS** that this claim be **DISMISSED** due to procedural default and, alternatively, as not cognizable in federal habeas review.

### F.    Ground Six: Ineffective Assistance of Trial Counsel

In his sixth ground for relief, Petitioner asserts that his trial counsel performed ineffectively by: (1) "fail[ing] to support him in a manner that's recommended by the state"; (2) "fail[ing] to discuss the case with him and or call any witness to help his case"; and (3) "allow[ing] whatever evidence the State had to offer be allowed but [barely] fought for his evidence." (Petition, ECF No. 4, PageID 72).  Petitioner did not raise this claim on direct appeal. (ECF No. 8, PageID 163 (listing the assignments of error raised on direct appeal).  However, Petitioner did raise an ineffective assistance of trial counsel claim in his Rule 26(B) application to reopen as an instance of ineffective assistance of appellate counsel for failing to raise the claim on direct appeal. (ECF No. 8, PageID 267–68).  In his application to reopen, Petitioner maintained that his trial counsel was ineffective for failing to object to the improper jury instructions and for failing to better advocate for answers to the jury's questions. *Id.*

Respondent contends that this claim is procedurally defaulted because it should have been raised on direct appeal, rather than as an underlying claim in a Rule 26(B) application. (Return, ECF No. 9, PageID 1201–02). Respondent points out that the claim was not preserved through the Rule 26(B) application, which Respondent also maintains was denied as untimely by the state appellate court. *Id.* at PageID 1202. Further, Respondent notes that the default cannot be excused by a defaulted and meritless ineffective assistance of appellate counsel claim. *Id.* at PageID 1203.

As an initial matter, some of the ineffective assistance of trial counsel claims Petitioner attempts to raise here are not the same claims he raised in state court. *Compare* Petition, ECF No. 4, PageID 72, *with* ECF No. 8, PageID 267–68. As noted above, to satisfy fair presentment, a petitioner seeking federal habeas relief must submit the same claim based on the same theory as raised to the state courts. *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). Petitioner did not raise some of these ineffective-assistance-of-trial-counsel claims in state court, so those are now procedurally defaulted. Accordingly, this ground for relief is construed as raising just those claims that were raised in Petitioner's Rule 26(B) application to reopen. *See* ECF No. 8, PageID 267–68.

Here, the claims concerning trial counsel's performance appear on the face of the record. (ECF No. 8-1, PageID 1114–21) (discussing whether defense exhibits containing hearsay can go back to jury for deliberations); *id.* at PageID 1123–26 (discussing jury instruction for "any criminal offense"). An Ohio prisoner procedurally defaults an ineffective-assistance-of-trial-counsel claim that he could have raised but did not raise on direct appeal. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Hand v. Houk*, 871 F.3d 390, 408–09 (6th Cir. 2017) (citations omitted) (noting that under Ohio's bifurcated appellate review process, claims "based only on evidence contained in the trial record" are "expected to [be raised] on direct appeal or else the claim is barred

by the doctrine of *res judicata*").  Petitioner raised this claim in his Rule 26(B) application, not on direct appeal.  As noted in the analysis of both Grounds Four and Five, a Rule 26(B) application does not preserve the underlying claims for federal habeas review.  *Smith*, 780 F. App'x at 218 (quoting *Davie*, 547 F.3d at 312; *White*, 431 F.3d at 526).  Also, as detailed above, Petitioner filed an untimely Rule 26(B) application and cannot excuse this defaulted claim with a defaulted ineffective assistance of appellate counsel claim.  *Edwards*, 529 U.S. at 453; *Ramirez*, 2016 WL 11848848, at \*4–5 (citing *Fautenberry*, 515 F.3d at 639–40; *Goldberg*, 692 F.3d at 538 n.3); *Williams*, 460 F.3d at 799–800 n.1; *Tomlinson*, 2015 WL 106060, at \*17.

Moreover, even if this ground for relief had been properly raised, Petitioner still has not shown that his trial counsel provided ineffective assistance.  "To establish ineffective assistance of counsel, a [petitioner] 'must show both deficient performance by counsel and prejudice.'" *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  Deficient performance requires that counsel's representation "[fell] below an objective standard of reasonableness." *Mammone v. Jenkins*, 49 F.4th 1026, 1049 (6th Cir. 2022) (citing *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009)); *Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.").  Counsel is strongly presumed to have provided effective assistance to the petitioner.  *Mammone*, 49 F.4th at 1049 (citing *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Strickland*, 466 U.S. at 689) ("The defendant must overcome the presumption that his counsel's actions were sound strategy.").  Review of "counsel's performance must be highly deferential," without "the distorting effects of hindsight."  *Strickland*, 466 U.S. at 689.  Prejudice requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Upshaw v. Stephenson*, 97 F.4th 365, 371 (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694).

Here, Petitioner contends that his trial counsel was ineffective for failing to object to the aggravated burglary jury instructions and for not arguing adequately to admit defense exhibits requested by the jury.  (Petition, ECF No. 4, PageID 72); (ECF No. 8, PageID 267–68).  Given the fact that Petitioner points to issues that did not rise to constitutional violations (*see* Grounds Four and Five above), it follows that trial counsel did not perform deficiently.  As noted in Ground Four, the provided jury instructions were within the bounds of Ohio law, and not so infirm to make the trial fundamentally unfair.  *Scott v. Mitchell*, 209 F.3d 854, 875 (6th Cir. 2000); *Steiner v. King*, 2023 U.S. App. LEXIS 30952 (6th Cir. Nov. 20, 2023) (quoting *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998)).  Although trial counsel stated that "I don't think we can give them any more than that," ECF No. 8-1, PageID 1124, it was not necessarily deficient to do so.  Because the jury instructions provided were within the bounds of Ohio law, trial counsel could have reasonably determined that additional instructions would be to Petitioner's detriment.  Petitioner's trial counsel is afforded deference in sound trial strategy, including advocating to limit any further instruction on what constitutes "any criminal offense."  *Mammone*, 49 F.4th at 1049 (citing *Pinholster*, 563 U.S. at 189; *Strickland*, 466 U.S. at 689).

Petitioner also contends that trial counsel did not fight to admit defense exhibits when the jury so requested.  (Petition, ECF No. 4, PageID 72); (ECF No. 8, PageID 268).  The state trial court denied admitting the exhibits because the documents contained hearsay, and trial counsel objected to that ruling.  (ECF No. 8-1, PageID 928–36) (discussing whether to admit defense exhibits, and trial counsel advocating to admit the exhibits); *id.* at PageID 942–45 (denying

admitting the defense exhibits because the documents contained inadmissible hearsay, and trial counsel objecting to that ruling).  Trial counsel advocated, multiple times, for sending the jury the defense exhibits and renewed a previous objection when the trial court denied the jury's request for the exhibits.  (ECF No. 8-1, PageID 1119) (noting that the exhibits "should have gone back to the jury because we don't believe that those documents are hearsay"); *id.* at PageID 1120 (renewing objection again).  Trial counsel cannot be said to have performed deficiently in advocating for admitting exhibits that were ultimately denied for permissible reasons related to state evidentiary rules.

Regarding prejudice, Petitioner has failed to demonstrate that, even if, *arguendo*, trial counsel performed deficiently, the outcome of the trial would have been different.  In assessing whether the petitioner was prejudiced by counsel's alleged failures, a habeas court "must consider 'the totality of the evidence before the judge or jury.'"  *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (quoting *Strickland*, 466 U.S. at 695).  Notably, looking to the analysis of Ground One above, the jury had sufficient evidence to convict Petitioner of both aggravated burglary and felony murder based on A.C.'s testimony.  (ECF No. 8, PageID 213–14) (state appellate court noting the same on direct appeal).  Whether the jury's verdict would have changed had the jurors received a more refined definition of "any criminal offense" is pure conjecture—and Petitioner provides no support to otherwise consider.  The same is true regarding the defense exhibits because the jury still heard the relevant information through Detective Mall's testimony.  (ECF No. 8-1, PageID 835–46 and 858–60) (detailing the detective's testimony related to defense exhibits 3, 4, and 5 at issue here).  Petitioner has not demonstrated a reasonable probability that the outcome of his trial would be different but for his counsel's alleged deficiencies.  *Upshaw*, 97 F.4th at 371 (quoting

*Strickland*, 466 U.S. at 694).  Accordingly, Petitioner has failed to show that he received ineffective assistance of counsel.

The undersigned **RECOMMENDS** that this claim be **DISMISSED** due to procedural default and, alternatively, because the claim lacks merit.

### IV.    Conclusion

For the foregoing reasons, the undersigned **RECOMMENDS** that the Petition be **DENIED**, and this action be **DISMISSED**.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a District Court must consider whether to issue a Certificate of Appealability ("COA").  A state prisoner who seeks a writ of habeas corpus in federal court does not have an automatic right to appeal a district court's adverse decision unless the court issues a COA.  28 U.S.C. § 2253(c)(1)(A).  When a claim has been denied on the merits, a COA may be issued only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)).  When a claim has been denied on procedural grounds, "a COA should issue when the [petitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

Because no reasonable jurist would disagree with the conclusion reached by the Court in this matter, the undersigned **RECOMMENDS** that Petitioner should not be granted a certificate

of appealability.  *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) ("While this standard is not overly rigid, it still demands 'something more than the absence of frivolity.'").

      **IT IS SO RECOMMENDED**.

June 13, 2024                                *s/Peter B. Silvain, Jr.*
                                                    Peter B. Silvain, Jr.
                                                    United States Magistrate Judge

## <u>NOTICE REGARDING OBJECTIONS TO THIS REPORT AND RECOMMENDATION</u>

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it within **<u>FOURTEEN DAYS</u>** after being served with a copy thereof.  Fed. R. Civ. P. 72(b); Rule 12 of the Rules Governing Section 2254 Cases in the United States District Court.  All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections.  The Court may extend the fourteen-day objections period if a timely motion for an extension of time is filed.  A Judge of this Court will make a *de novo* determination of those portions of the R&R to which objection is made. Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).